UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SHACKS,

     Plaintiff,                           Civil Action No. 08-13981

v.                                 HON. PAUL D. BORMAN
                                 U.S. District Judge
                                 HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Daniel Shacks brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).    I recommend that Defendant's Motion for Summary Judgment be GRANTED,  and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On April 8, 2005,  Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability as of January 7, 2003 (Tr. 66).  After the initial denial of the claim, Plaintiff made a timely request for an administrative hearing, held on November 27, 2006 in Flint, Michigan (Tr. 257).   Administrative Law Judge ("ALJ") Ben S. Engelman

-1-

presided (Tr. 270). Plaintiff, represented by Donald Popielarz, testified Tr. 259-273). On July 2, 2007, the ALJ held a supplemental hearing. Plaintiff testified, as did Vocational Expert ("VE") Ann Tremblay (Tr. 279-284, 284-288). On January 4, 2008, ALJ Engelman found that Plaintiff was unable to perform any of his former jobs but was capable of a significant range of other work (Tr. 28-31). On July 17, 2008, the Appeals Council denied review (Tr. 4-6). Plaintiff filed suit in this Court on September 15, 2008.

## BACKGROUND FACTS

Plaintiff, born July 6, 1961, was 46 at the time of the administrative decision (Tr. 31, 66). He completed high school and attended college, working previously as a bakery assistant, maintenance worker, laborer, office assistant, and volunteer recruit (Tr. 104, 110). Plaintiff alleges disability as a result of hypertension and complications resulting from a left elbow fracture (Tr. 103).

### A.    Plaintiff's Testimony

Plaintiff reported that he received an Associates Degree in 1985 (Tr. 260). He denied working since his alleged onset of disability in January, 2003 (Tr. 260). He reported that his former work included parts inspection, adding that the job did not require him to lift more than two to three pounds (Tr. 260-261). Plaintiff admitted that he had been incarcerated from February, 2003 to February, 2005[1] (Tr. 261). Plaintiff testified that in October, 2002, he shattered his left elbow (Tr. 264). He reported that he now experienced

---

[1]Plaintiff's alleged onset of disability date was amended to his release date of February 22, 2005 (Tr. 273-274).

-2-

severe arthritis for which he took Naproxen (Tr. 264).  In addition, he alleged chronic back pain, hemorrhoids, and shortness of breath (Tr. 264).  He stated that he received an angioplastic stent following a stress test showing arterial sclerosis (Tr. 264-265).  Plaintiff reported that despite the stent implantation, he still experienced shortness of breath and was unable to lift more than 10 pounds (Tr. 265).  He testified that he currently took Nitroquick and Lovastatin for his heart condition and Vicodin for back pain (Tr. 267).  He estimated that he could lift up to seven pounds, sit for up to 20 minutes, walk for two blocks, and stand for short periods (Tr. 268-269).  He alleged only a limited ability to grasp or reach with his left hand/arm (Tr. 271).

Plaintiff reported that Naproxen caused headaches, requiring him to recline twice a day for "long periods of time" (Tr. 271).  He testified that back problems prevented him from driving (Tr. 272).  He acknowledged that he was currently taking classes at Davenport College toward a Bachelor's Degree (Tr. 273).  The ALJ adjourned the hearing pending the results of an echocardiogram (Tr. 274).

At the second hearing, Plaintiff testified that he continued to experience chest pain, despite objective testing showing no complications from the stent implant (Tr. 280).  He reported that he took nitroglycerine for chest pains up to three times a day (Tr. 280).  He also alleged continuing back pain, arthritis in his left elbow, and lightheadedness (Tr. 281).  Plaintiff added that he took Plavix for his heart condition (Tr. 282).  He testified that he was unable to sit for extended periods or lift more than ten pounds (Tr. 283-284).

**B. Medical Evidence**

-3-

### 1. Treating Sources

In October, 2002 surgery to repair Plaintiff's left elbow fracture was performed without complications (Tr. 130-131). In January, 2003, Waheed Akbar, M.D., noting that Plaintiff had "healed well," prescribed physical therapy for recurring stiffness (Tr. 138). Michigan Department of Correction ("MDOC") health care notes from the following month state that Plaintiff had "80%" use of his left elbow but was unable to fully straighten his arm (Tr. 171). The same month, Plaintiff denied health problems other than "occasional left elbow pain" (Tr. 170). MDOC treating notes from July, 2004 indicate that Plaintiff's blood pressure was 169/102 (Tr. 162). In September, 2004, Plaintiff was prescribed blood pressure medication after receiving a reading of 174/105 (Tr. 157). The following month, Plaintiff's reading was 145/92 (Tr. 157). In November, 2004, Plaintiff was advised to lose weight (Tr. 156). In March, 2005, Plaintiff sought treatment after experiencing elbow tenderness and swelling (Tr. 181). The following month, he received treatment for hemorrhoids (Tr. 177).

Treating notes from July, 2005 indicate that a recent EKG showed abnormal results (Tr. 199). In October, 2005, Plaintiff underwent a cardiac catheterization and angioplasy with a stent placement following the discovery of more than 90% stenosis in the proximal left anterior descending artery (Tr. 223). An echocardiogram and a stress test performed later the same month showed unremarkable results (Tr. 215, 218). The following month, Plaintiff reported that one of his prescription drugs had been stolen during the burglary of his home (Tr. 207).

In February, 2006, David W.T. Chen, M.D., noting that Plaintiff's blood pressure was

-4-

120/80, found that "[f]rom a cardiac point of view, he is quite stable" (Tr. 212). Treating notes from the same month show that Plaintiff was applying for a job, but was concerned that "accidental" cocaine use six days prior to his exam would affect his upcoming drug screening (Tr. 210). In August, 2006, Dr. Chen, again noting a history of a stent to the left anterior descending artery without complications, observed that Plaintiff's hypertension continued to be well controlled (Tr. 201). The following month, Plaintiff's Zocor dosage was increased after tests revealed an elevated triglyceride reading (Tr. 224). Plaintiff was advised to follow a low-fat diet and exercise daily (Tr. 224).

In December, 2006, Dr. Chen prescribed Vicodin after Plaintiff reported "severe back pain" (Tr. 238). Plaintiff also complained of chest pain, shortness of breath, and headaches (Tr. 237). In January, 2007, a stress test was terminated after Plaintiff reported chest pain (Tr. 240). Noting that Plaintiff's exercise level was "submaximal," he recommended an alternative study (Tr. 240). In March, 2007, an exercise echocardiogram showed "no electrocardiographic evidence of ischemia" or arrhythmia (Tr. 229-230). Plaintiff complained of chest tightness (Tr. 229). The same month, Dr. Chen noted that Plaintiff's ongoing back pain was improved with Vicodin (Tr. 227).

### 2.  Non-Treating Sources

In May, 2005, Siva Sankaran, M.D. examined Plaintiff on behalf of the SSA (Tr. 183-185). Plaintiff reported that he intended to start physical therapy for his October, 2002 elbow fracture (Tr. 183). Dr. Sankaran remarked that Plaintiff currently took Norvasc for hypertension and Naprosyn for arthritis of the left elbow (Tr. 183-184). Plaintiff

demonstrated a steady gait and a full range of motion in all joints (Tr. 185). Dr. Sankaran found the absence of "acute arthritis" (Tr. 185, 187-189).

A Residual Functional Capacity Assessment performed on behalf of the SSA the following month found that Plaintiff could lift 50 pounds occasionally and 25 frequently; sit, stand, and walk for six hours in an eight-hour workday; and push and pull without limitation in both extremities (Tr. 192). The Assessment found the absence of postural, manipulative, visual, communicative, and environmental limitations, concluding that Plaintiff's allegations of disability were only partially credible (Tr. 193-196).

### 3. Material Submitted Subsequent to the January 4, 2008 Administrative Decision

On March 12, 2008, Dr. Chen composed an opinion letter, stating that while Plaintiff had "done better" since his 2005 angioplasty, "in the last six or seven months, he . . . continued to have symptoms of chest pain and shortness of breath" (Tr. 255).[2]  The same

---

[2]
Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

Plaintiff does not request a Sentence Six remand. Any issue not raised directly by Plaintiff is deemed waived. *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002). Even assuming for the sake of argument that Plaintiff had raised this issue, neither of the March, 2008 letters contradicts the ALJ's conclusion that Plaintiff was capable of sedentary

month, Brenda Coughlin, M.D. also wrote an opinion letter, noting that a stress echocardiogram performed in February, 2008 showed "no ischemic changes" (Tr. 256). Dr. Coughlin also noted that Plaintiff experienced back pain "with L3-4 mild facet arthrosis" but that "no other abnormalities [were] noted on physical examination (Tr. 256).

## C.   Vocational Expert Testimony

VE Tremblay classified Plaintiff's former job as a telemarketer as unskilled at the sedentary exertional level; work as an inspector, maintenance worker, and office assistant as unskilled at the light exertional level; and production work as semi-skilled and sedentary[3] (Tr. 122, 284). The ALJ then listed the following hypothetical limitations:

> "Let's assume that we have . . . a 47-year-old claimant with the background described, the work history, and he has – technically, it's a two-year college degree in accounting and business. Limited to sedentary work with the ability to more frequently sit or stand during the workday than the – well, first of all, three months as a telemarketer. Is that – I mean it's unskilled, so I assume that that's some job you can learn in a short period of time?"

(Tr. 285). The VE found that the hypothetical individual could perform the sedentary,

work with a sit/stand option.   Dr. Chen's  statement that Plaintiff was currently seeing a specialist for "asbestos exposure," is unsupported by any treating records (Tr. 255). Dr. Coughlin's summary of Plaintiff's medical conditions later the same month, including hemorrhoids and erectile dysfunction, makes no mention of asbestos exposure, noting further that a February, 2008 echocardiogram showed "no ischemic changes" (Tr. 256).

[3]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

unskilled jobs of a cashier (10,000 positions in the lower peninsula of Michigan), assembler (6,500), and inspector (2,200), adding that her findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 286-287). The VE testified that if Plaintiff's allegations of frequent shortness of breath and the need to lie down multiple times each day was fully credited, he would be incapable of any full time work (Tr. 287).

###    D.    The ALJ's Decision

ALJ Engelman found that although Plaintiff experienced the severe impairments of "coronary artery disease with placement of a left anterior descending artery stent; back complaints; and residuals of a broken left olecranon," none of the conditions met or equaled an impairment listed in Appendix 1 Subpart P, Regulations No. 4. (Tr. 23, 25). The ALJ found that Plaintiff retained the Residual Functional Capacity for "sedentary work which would allow him to alternate between seated and standing position" (Tr. 25). Citing the VE's job numbers, he determined that Plaintiff could perform the work of a cashier, assembler, or inspector (Tr. 30).

ALJ Engelman found Plaintiff's allegations of disability "not entirely credible," commenting as follows:

> "All of the clinical testing pertaining to the claimant's coronary artery disease shows little more than that he had a partially occluded artery in which a stent was placed with no evidence at all of significant heart damage or any breathing or pulmonary problem which could account for his complaints."

(Tr. 27). The ALJ found that "there is no opinion from any treating or examining medical source indicating that the claimant was disabled or, indeed, under any very significant long-

term limitations," noting that the June, 2006 Residual Functional Capacity Assessment found

that Plaintiff could perform exertionally medium work (Tr. 28).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of*

*Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more

than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir.

1986)(en banc).  In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health*

*& Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the

administrative record as a whole, and may look to any evidence in the record, regardless of

whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*,

884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

-9-

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

 Plaintiff contends that ALJ's choice of hypothetical limitations did not account for his true degree of impairment, thus tainting the VE's job findings.  *Plaintiff's Brief, Docket #13* at 6-13 (*citing Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir. 1987)).  He makes the overlapping argument that the ALJ impermissibly discounted his allegations of limitation. *Id.* at 8-13 (*citing* Tr. 27).

Determination of the hypothetical question's sufficiency depends in large part on whether the ALJ was entitled to reject Plaintiff's credibility.  Hence, the Court will address the ALJ's credibility analysis before considering the hypothetical question argument.

### A.  The Credibility Determination

-10-

**1.  General Principles**

As a rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *see also Richardson, supra,* 402 U.S. at 401.  However, an ALJ's decision must contain specific reasons for the findings of credibility, supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001).  Guided by SSR 96-7p, the credibility determination describes a two-step process for evaluating symptoms. *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.  1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques."   *Id.*   Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze the claimant's testimony "based on a consideration of the entire case record."

**2.  The ALJ's Credibility Determination Does Not Provide Grounds for Reversal**

 The ALJ's credibility determination was both procedurally and substantively correct. Consistent with the requirements of SSR 96-7p, the ALJ determined as follows:

> "Frankly, the claimant fails to meet the first step in the [SSR 96-7p] process. The claimant's reported chest pain and back problems are, at this point, almost entirely subjective without any underlying medically determinable physical or mental impairments"

(Tr. 27).    Further, contrary to Plaintiff's claim that the administrative opinion contained only a "blanket assertion" that he was not credible, *Plaintiff's Brief* at 10, the ALJ provided ample reasons for the determination.  In conformity with the second step of SSR 96-7p, he noted that Plaintiff's claim  that he suffered low back pain was "not documented at all save for . . . uncorroborated statements to Dr. Chen that he had a significant back problem in the past and was suffering a lot of pain," noting that the cardiologist's "diagnosis" of  arthritis of the back was based solely on Plaintiff's report (Tr. 24-25, 27).  The ALJ's finding that Plaintiff's claim of disabling chest pain and tightness stood at odds with objective tests performed subsequent to the October, 2005 stent placement is also well supported by substantial  evidence  (Tr.  24,  212,  215,  218).    Further,  although  Plaintiff  exhibited  a "submaximal" effort in a January, 2007 stress test (purportedly due to chest pain), a follow-up study two months later showed normal results (Tr.  229-230, 240).

The ALJ also rejected Plaintiff's claim of disabling limitations as a result of an October, 2002 left elbow fracture, noting that January, 2003 treating records showed that the break had "healed well" (Tr. 23).   He also observed that Dr. Sankaran's May, 2005 findings showed only minimal range of motion limitations (Tr. 24).  The ALJ noted that despite claims of ongoing elbow problems, Plaintiff had not sought physical therapy (Tr. 24).   The ALJ's finding is also supported by MDOC treating notes stating that Plaintiff experienced only "occasional left elbow pain" (Tr. 170).  The ALJ's credibility determination, amply supported by record evidence, does not provide grounds for remand.

-12-

## B.   The Hypothetical Question

### 1.  General Principles

A hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments.  *Varley, supra,* 820 F.2d at 779.  In *Webb v. Commissioner of Social Sec.*, 368 F.3d 629 (6th Cir. 2004), the court  rejected the notion that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question, nonetheless acknowledging that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632 (*citing Varley, supra,* 820 F.2d at 779).  *See also, Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).

### 2.  Substantial Evidence Supports the ALJ's Job Conclusions

Plaintiff contends that his alleged need to lie down at unpredictable times during the workday should have been included among the hypothetical limitations, citing the VE's testimony that such an impairment would preclude all work.  *Plaintiff's Brief* at 8 (*citing* Tr. 287).   However, as discussed above, because substantial evidence stands at odds with Plaintiff's claims of extreme limitations, the ALJ was not required to include them in the hypothetical question to the VE.  "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).   The record shows further that since Plaintiff's alleged onset of disability, he has maintained an active family and social life, taken classes in pursuit

-13-

of a college degree, and applied for at least one job (Tr. 210, 268, 273).

In closing, the Court notes that its recommendation to uphold the administrative decision is not intended to trivialize his medical history of either arteriosclerosis or elbow fracture. Nonetheless, the administrative finding that Plaintiff was not disabled from *all* work, both procedurally and substantively adequate, falls well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc), the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
UNITED STATES MAGISTRATE JUDGE

Dated:  October 21, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 21, 2009.

s/Susan Jefferson
Case Manager

-15-